UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ALLSTATE INSURANCE COMPANY

             Plaintiff,                            Case No. 16-cv-10290
                                                  Hon. Gershwin A. Drain

v.


SUPERIOR DIAGNOSTICS, INC, d/b/a
SUPERIOR IMAGING

             Defendant.


_____

### **DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Defendant Superior Diagnostics, Inc., d/b/a Superior Imaging, ("Superior"), by and through its attorneys, moves to dismiss Plaintiff Allstate Insurance Company's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for the reasons set forth in the attached brief. Allstate filed the Complaint in this case shortly after litigation began in the state courts related to the amounts charged by Superior for MRIs. This Complaint is Allstate's attempt to make an end-run in the state court cases and to circumvent the Michigan No Fault Act.

Counsel for Defendant sought concurrence in the relief requested in this motion, and such concurrence from Plaintiff was denied, necessitating the filing of this motion.

WHEREFORE, Defendant respectfully requests this Honorable Court enter an order dismissing Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

JOELSON ROSENBERG PLC

/s/ Peter W. Joelson
Peter W. Joelson (P51468)
pwj@jrlawplc.com
Emily Warren (P76675)
ewarren@jrlawplc.com
*Attorneys for Defendant*
30665 Northwestern Hwy., Ste 200
Farmington Hills, MI  48334
(248) 626-9966  fax:  (248) 855-9496

LAW OFFICES OF GARY R. BLUMBERG PC

/s/ Gary R. Blumberg
Gary R. Blumberg (P29820)
grblumberg@blumbergpc.com
*Attorneys for Defendant*
15011 Michigan Ave.
Dearborn, MI 48126
(313) 230-1121

Dated:      February 29, 2016

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE COMPANY

       Plaintiff,                       Case No. 16-cv-10290
                                       Hon. Gershwin A. Drain

v.

SUPERIOR DIAGNOSITCS, INC, d/b/a
SUPERIOR IMAGING

       Defendant.

_____

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## TABLE OF CONTENTS

ISSUES PRESENTED................................................................................i

CONTROLLING OR MOST APPROPRIATE AUTHORITIES........................... ii

CITED AUTHORITIES ....................................................................... iii

I.    INTRODUCTION .........................................................................1

II.   FACTUAL BACKGROUND.............................................................2

      A.    The Michigan No-Fault Act ..................................................2

      B.    Allstate's Failed Legislative Efforts To Reduce No-Fault Benefits and
            Reimbursements Paid Prompted this Lawsuit ......................................5

      C.    Allstate Has Already Determined the Reasonableness of the Charges
            and Made Payments on the Majority of the Claims at Issue.................6

      D.    Allstate Litigated or is Currently Litigating the Reasonableness of
            Superior's Charges in State Court........................................................6

III.  ANALYSIS.....................................................................................7

      A.    Standard of Review ..............................................................7

      B.    This Court Should Abstain Pursuant to the *Burford* and *Colorado River*
            Abstention Doctrines………………………………………………8

            1.    *Burford* Abstention Doctrine…………………………………..8

            2.    *Colorado River* Abstention Doctrine…………………………11

      C.    Allstate's Declaratory Judgment Claim Should be Dismissed………13

            1.    Allstate is Judicially Estopped from Bringing its Declaratory
                  Judgment Claim Where It Has Already Conceded that Federal
                  Courts Should Decline Jurisdiction of Declaratory Judgment
                  Actions Related to the No-Fault Act In Another Proceeding…13

2.       The McCarran-Ferguson Act Provides for Reverse Preemption of Allstate's Declaratory Judgment Claim……………..……..16

3.       The *Wilton/Brillhart* Doctrine Provides Courts With Greater Discretion to Decline Jurisdiction Over Declaratory Judgment Actions. ……………………………………………………18

4.       The *Scottsdale* Factors Favor that the Court Decline to Exercise Jurisdiction on Allstate's Declaratory Judgment Claim……...19

D.     Collateral Estoppel or Claim Preclusion Compels Dismissal of The Complaint…………………………………………………………..

IV.     CONCLUSION..............................................................................................24

<u>ISSUES PRESENTED</u>

I.   Whether this Honorable Court should abstain on the basis of the *Burford* and *Colorado River* Abstention Doctrines?

      Defendant Answers: Yes

II.  Whether this Honorable Court should dismiss Plaintiffs' Declaratory Judgment Claim under 28 U.S.C. § 2201 because: (1) Allstate is judicially estopped from bringing such a claim when it has already conceded that federal jurisdiction over its declaratory judgment action would be inappropriate in another judicial proceeding, (2) the McCarran-Ferguson Act, 15 U.S.C. §§ 1011 *et seq,* provides for reverse preemption of Allstate's declaratory judgment claim, (3) the Court should abstain from hearing this case based upon the discretionary standards defined in *Wilton/Brillhart,* and (4) the *Scottsdale* factors favor that the Court decline to exercise jurisdiction on Allstate's declaratory judgment claim.

      Defendant Answers: Yes

III. Whether this Honorable Court should dismiss Plaintiffs' Complaint in its entirety or appropriate portions thereof on the basis of Collateral Estoppel?

      Defendant Answers:  Yes.

IV.  Whether this Honorable Court should dismiss Allstate's Complaint because the relief requested by Allstate is already provided by the Michigan No Fault Act?

      Defendant Answers: Yes.

V.   Whether this Honorable Court should dismiss Allstate's Complaint because the relief requested by Allstate not codified in the Michigan No Fault Act and this Court lacks jurisdiction to amend the Michigan No Fault Act?

      Defendant Answers: Yes.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

I.     The decisions in *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943) and *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976), dictate that the relief sought in the first issue presented in this Motion be granted, namely that the Court abstain from determining the issues set for the in the Complaint.

II.    The decisions in *Allstate Ins. Co. v. Nowakowski,* 861 F. Supp. 2d 866 (W.D. Mich. 2012); *New Hampshire v. Maine,* 532 U.S. 742 (U.S. 2001); *Valentine-Johnson v. Roche,* 386 F.3d 800 (6th Cir. 2004); *Renishaw P.L.C. v. Marposs Societa' Per Azioni,* 974 F. Supp. 1056 (E.D. Mich. 1997); The McCarran-Ferguson Act, 15 U.S.C. § 1011, *et seq.; United States Dep't of Treasury v. Fabe,* 508 U.S. 491 (1993); *Genord v. Blue Cross & Blue Shield,* 440 F.3d 802 (6th Cir. 2006); *Mud v. State Farm Mut. Auto. Ins. Co.,* 478 Mich. 178 (2007); *Wilton v. Seven Falls Co.,* 515 U.S. 277 (1995); *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491 (1942); and *Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546 (6th Cir. 2008), dictate that the relief sought in the fourth issue presented in this Motion be granted.

III.   The United States Constitution, Art. IV, § 1 and 28 U.S.C. § 1738, as well as the decisions in *Allen v. McCurry,* 449 US. 90 (1980); *Migra v. Warren City School Dist.,* 465 U.S. 75 (1984); *Storey v. Meijer, Inc.,* 431 Mich. 368 (1988) and *Monat v. State Farm Ins. Co.,* 469 Mich. 679 (2004), dictate that the relief sought in the fifth issue presented in this Motion be granted.

## CITED AUTHORITIES

**Court Rules**

Fed. R. Civ. P. 12(b)(6)............................................................ 24

**Statutes**

15 U.S.C. § 1011 *et seq.*.......................................................... 16

28 U.S.C. § 1738 ...................................................................... 23

28 USC § 2201(a) ........................................................... 7, 13, 17

M.C.L § 500.3101 *et seq.*........................................................ 2, 3

M.C.L. § 500.3105 ...................................................................... 3

M.C.L. § 500.3107(1)(a)............................................................. 3

M.C.L. § 500.3142(2) ............................................................... 18

M.C.L. § 500.3148 ................................................................... 18

M.C.L. § 500.3157 ...................................................................... 4

1956 Mich. Pub. Acts 218......................................................... 17

**Cases**

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Assn,*
    257 Mich. App. 365 (2003) ...............................................5

*Advocacy Organization for Patients & Providers v. Auto Club Ins. Assin,*
    176 F.3d 315 (6th Cir. 1999) ...........................................6

*Aetna Casualty and Sur. Co. v. Sunshine Corp.,*
    74 F.3d 685 (6th Cir. 1996) ...........................................20

*Allen v. McCurry,*
    449 US. 90 (1980)............................................................23

*Allstate Ins. Co. v. Nowakowski,*
   861 F. Supp. 2d 866 (W.D. Mich. 2012) ............................................................13

*American Home Assurance Co. v. Evans,*
   791 F.2d 61 (6th Cir. 1986) ...........................................................................22

*Bituminous Cas. Corp. v. J & L Lumber Co.,*
   373 F.3d 807 (6th Cir. 2004) ........................................................................21

*Brillhart v. Excess Ins. Co. of America,*
   316 U.S. 491 (1942).............................................................................18. 19

*Bronson Methodist Hosp. v. Home-Owners Ins. Co.,*
   295 Mich. App. 431 (2012) ...................................................................5, 6, 18

*Burford v. Sun Oil Co.,*
   319 U.S. 315(1943).............................................................................8, 9, 11

*Colorado River Water Conservation District v. United States,*
   424 U.S. 800 (1976).......................................................................8, 11, 12, 19

*Genord v. Blue Cross & Blue Shield,*
   440 F.3d 802 (6th Cir. 2006) ....................................................................16, 17

*Gentry v. Wayne County,*
   2010 U.S. Dist. LEXIS 123365 (E.D. Mich. 2010)..........................................11

*Intl Dairy Foods Ass'n v. Boggs,*
   2009 U.S. Dist. LEXIS 27074 (S.D. Ohio 2009) ...............................................5

*Migra v. Warren City School Dist.*
   465 U.S. 75 (1984).........................................................................................23

*Monat v. State Farm Ins. Co.,*
   469 Mich. 679 (2004) .....................................................................................23

*Moon v. Harrison Piping Supply,*
   375 F. Supp. 2d 577 (E.D. Mich. 2005) ......................................................9, 10

iv

*Muci v. State Farm Mutual Automobile Ins. Co.,*
    478 Mich. 178 (2007) ...............................................................4, 10, 17

*New Hampshire v. Maine,*
    532 U.S. 742 (2001) ..........................................................................14

*Quackenbush v. Allstate Ins. Co.,*
    517 U.S. 706 (1996)..........................................................................10

*Renishaw P.L.C. v. Marposs Societa' Per Azioni,*
    974 F. Supp. 1056 (E.D. Mich. 1997) ..............................................14

*Rohlman v. Hawkeye-Security Insurance,*
    442 Mich. 520 (1993) ...................................................................4, 10

*Rouse v. Daimler Chrysler Corporation,*
    300 F.3d 711 (6th Cir. 2002) .............................................................8

*Scottsdale Ins. Co. v. Flowers,*
    513 F.3d 546 (6th Cir. 2008) ...............................................19, 20, 21

*Storey v. Meijer, Inc.,*
    431 Mich. 368 (1988) .......................................................................23

*United States Dep't of Treasury v. Fabe,*
    508 U.S. 491 (1993)..........................................................................17

*United States v. Owens,*
    54 F.3d 271 (6th Cir. 1995) .............................................................15

*Valentine-Johnson v. Roche,*
    386 F.3d 800 (6th Cir. 2004) ...........................................................15

*Warrior Sports, Inc. v. STX, L.L.C.,*
    596 F. Supp. 2d 1070 (E.D. Mich. 2009) ..........................................7

*Wilton v. Seven Falls Co.,*
    515 U.S. 277 (1995) ...............................................................7, 18, 19

## I.   INTRODUCTION

Plaintiff Allstate Insurance Company ("Allstate" or "Plaintiff"), along with State Farm Mutual Automobile Insurance Company and other insurers, have declared war against Michigan's physicians, chiropractors, and other medical treatment providers, as well as its own insureds.  Defendant Superior Diagnostics, Inc., d/b/a Superior Imaging ("Superior") is Allstate's latest victim.

Allstate's Complaint contains one cause of action against Superior for Declaratory Relief Pursuant to 28 USC § 2201.  (Plaintiff's Complaint, Dkt. 1, p. 20).  The relief requested by Allstate is already provided by the Michigan No Fault Act or is *not* provided by the Michigan No Fault Act and is effectively a request for this Court to revise the Michigan No Fault Act.  This Court does not have jurisdiction to grant the relief requested by Allstate.

Allstate's Complaint is nothing more than an attempt to back-door the Michigan Legislature's No Fault System.  The purpose of this lawsuit is to allow Allstate to obtain a declaratory judgment against Superior (or any other treatment provided for that matter) that Allstate can file with any state court in response to a lawsuit by a treatment provider seeking reimbursement or payment of benefits to which it is entitled under the Michigan No Fault Act.  This case is meant to serve as the ultimate defense against any potential lawsuit filed by a treatment provider or an insured against Allstate.  This is part and parcel of Allstate's (and other insurers')

efforts to suppress medical providers' rights to reimbursement under Michigan's No-Fault Act.[1]    Allstate's goal is to have this Court impose a fee schedule for reimbursable MRI charges.  Allstate is attempting in this case, as it is attempting throughout the State, to achieve through litigation what it has not been able to accomplish through legislative change, namely to amend the Michigan No Fault Act to include fee schedules.  For the reasons stated below, Allstate's Complaint should be dismissed.

## II.    FACTUAL BACKGROUND

### A.    Michigan's No-Fault Insurance Act.

Allstate's claims center on reasonableness of Superior's MRI charges for insurance claims submitted for reimbursement of services provided to patients injured in automobile accidents pursuant to Michigan's No Fault Insurance Act, MCL § 500.3101, *et seq* ("Act" or "No Fault Act).  The No Fault Act requires every registrant of a motor vehicle in Michigan to carry insurance.  The No Fault Act also requires an insurer, such as Allstate, to pay benefits to or for the benefit of the insured.  "An insurer is liable to pay benefits for accidental bodily injury arising out

---

[1] A simple PACER search with Allstate as a plaintiff for actions for declaratory relief is revealing in this regard. The Court can take judicial notice of same. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999) (courts may take judicial notice of public records). See for example, Allstate Insurance Company, et al. v. Pispidikis, D.C. et al, 13-cv-13384; Allstate Insurance Company et al v. Spine Specialists of Michigan, P.C. et al, 13-cv-13539; Allstate Insurance Company et al v. Universal Health Group, Inc. et al 13-cv-15108; Allstate Insurance Company v. Silver Pine Imaging, LLC, 14-cv-10356.

of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle." MCL § 500.3105. submission of purportedly fraudulent insurance claims by Defendants for reimbursement of services provided to patients injured in automobile accidents pursuant to Michigan's No-Fault Insurance Act, MCL § 500.3101 *et seq* (the "No-Fault Act"). "An insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." MCL § 500.3105.

No-fault benefits are statutorily referred to as "personal protection insurance benefits" and are often referred to as "PIP benefits." Under Michigan law, these PIP benefits are typically paid by the victim's own insurance company and are always paid regardless of who was at fault for the accident.

No-Fault PIP benefits payable under Michigan's system include certain "allowable expenses" which are statutorily described as "all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery or rehabilitation." MCL § 500.3107(1)(a). The statute contains no further definition of the scope and extent of these allowable expenses. However, various court decisions have established that allowable expenses include a wide variety of products and services, including medical and hospital expenses; in-home nursing or attendant care; residential accommodations; room and board expenses; physical and vocational rehabilitation; special motor

3

vehicle transportation; medical transportation mileage; guardianship expenses; etc.

Although the statute as a whole focuses on the insurer and the insured individual

named in the policy, the No-Fault Act also provides that:

> A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a reasonable amount for the products, services and accommodations rendered.

MCL § 500.3157.

"[T]his first-party payment scheme . . . was designed to cover contingencies

that could arise, including, as relevant here, the process for making a claim, the

procedures for investigation by the insurer, and the range of available enforcement

tools. All of which are found within the four corners of the act. *Muci v. State Farm

Automobile Ins. Co.*, 478 Mich. 178, 187-188 (2007). See also *Rohlman v. Hawkeye-

Security Insurance*, 442 Mich. 520, 525 (1993) (stating that the Act is the "rule book

for deciding issues related to insurance benefits).

Insureds can assign their contractual right to no-fault benefits to providers of

medically necessary services and, pursuant to the assignments, providers may submit

the insureds' claims directly to insurers. Although the Act requires that an insurer

only pay a "reasonable" charge for the particular product or service, "the Legislature

has not defined what is 'reasonable' in this context, and, consequently, insurers must

determine in each instance whether a charge is reasonable in light of the service or

product provided." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n,* 257 Mich. App. 365, 379 (2003). Indeed, "the act contemplates that...insurers will assess the reasonableness of a provider's charges, paying that portion *deemed reasonable,* with the provider having the prerogative to then challenge the insurer's decision not to pay the entire charge submitted by filing suit. Once an action is filed, the provider has the burden of proving by a preponderance of the evidence the reasonableness of its charges." *Bronson Methodist Hosp. v. Home-Owners Ins. Co.,* 295 Mich. App. 431, 450 (2012).

### B.    Allstate's Failed Legislative Efforts To Reduce No-Fault Benefits and Reimbursements Paid Prompted this Lawsuit.

For years, Allstate and other insurers have made numerous unsuccessful attempts to change the No-Fault Act for their own financial benefit. For example, the industry attempted to place a cap on the state's currently unlimited medical benefits for those injured in a crash and limit hospital fees and payments for in-home care. 2011 H.B. 4936 and legislative analysis of same, and 2011 S.B. 0294.[2]

The instant lawsuit is nothing more than an attempt to achieve through litigation what Allstate has not achieved through legislative change — a judicial determination of a "reasonable" charge to be applied across the board. "As the United

---

[2] The court can take judicial notice with respect to legislative history. *See e.g., Intl Dairy Foods Ass 'n v. Boggs,* 2009 WL 937045 at *16, n.17 (S.D. Ohio 2009) *(rev'd in part on other grounds).*

States Court of Appeals for the Sixth Circuit recognized, the statutory provisions leave open the questions of (1) what constitutes a reasonable charge, (2) who decides what is a reasonable charge, and (3) what criteria may be used to determine what is reasonable. *Bronson,* 295 Mich. App at 446 (citing *Advocacy Organization for Patients & Providers v. Auto Club Ins. Ass 'n,* 176 F,3d 315, 320 (6th Cir. 1999)).

### C.   Allstate Has Already Determined the Reasonableness of the Charges and Made Payments on the Majority of the Claims at Issue.

Allstate admits it is *required* under the No-Fault Act to challenge the reasonableness of charges prior to payment (Dkt. #1, ¶¶50-51).  Having previously assessed or investigated the charges, Allstate made numerous payments to Superior for MRIs; most of those payments were not the amount charged by Superior, but some other amount presumably determined to have been "reasonable" by Allstate. Therefore, in accordance with the Act, Allstate assessed the reasonableness of those charges and paid what it deemed reasonable.

### D.   Allstate Litigated or is Currently Litigating the Reasonableness of Superior's Charges in State Court.

Moreover, Allstate fails to inform this Court that the reasonableness of Superior's charges are currently being litigated in state court lawsuits or, alternatively, have already been settled or litigated to final judgment. Superior's access to all of the state court cases that encompass the claims Allstate asserts is

limited and Allstate should provide that information forthwith if it will assist the Court.

Thwarted by its failed legislative efforts and/or uncomfortable with the daunting prospect of proving its defenses in pending state court provider lawsuits, Allstate now improperly turns to the Federal Courts to achieve its goal of this Court determining an exact dollar amount that is a "reasonable" charge under the No-Fault Act without undergoing the required case by case considerations mandated by the Act. "Mandating" Superior's charges, however, would not only run afoul of the Act's clear language, it would also effectively serve as a declaratory judgment against all MRI providers conducting business in Michigan.

## III.    ANALYSIS

### A.    STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for failure to state a claim upon which relief can be granted. Moreover, the exercise of jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), is not mandatory.  Federal courts are given substantial discretion in deciding whether or not to exercise their declaratory relief jurisdiction. *Wilton v. Seven Falls Co.,* 515 U.S. 277, 282-86 (1995). "[A]t times the better exercise of discretion favors abstention, `[e]ven assuming that the immediacy and reality prerequisites for declaratory judgment relief have been met.'" *Warrior Sports, Inc. v. STX, L.L. C.,*

596 F. Supp. 2d 1070, 1077 (E.D. Mich. 2009). Furthermore, abstention is also appropriate under the standards articulated below in *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943) and/or *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976).

**B.    This Court Should Abstain Pursuant to the *Burford* and *Colorado River* Abstention Doctrines.**

**1.    *Burford* Abstention Doctrine.**

Abstention is appropriate under the doctrine of *Burford* when "(1) a case presents 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,' or (2) the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Rouse v. Daimler Chrysler Corporation,* 300 F.3d 711, 716 (6th Cir. 2002). The goal of this abstention doctrine is "avoid conflict with a state's administration of its own affairs." *Id.*

While it is true that no administrative proceeding is ongoing, this is because there is no Michigan state agency empowered to adjudicate claims under the No-Fault Act. Instead, Michigan courts are the proper forum for resolution of No-Fault disputes. The choice of the Michigan government to allocate this responsibility to the state courts rather than to a state agency should have no affect on the state's ability to control policy on such an inherently state-specific issue as no-fault

8

insurance. Likewise, the lack of an existing administrative agency should not compel Allstate to argue the same issue in multiple courts at Allstate's whim. Accordingly, this is a textbook example of a case fit for *Burford* abstention. Michigan's No-Fault Act is a particularly unique state-law regime which is unquestionably "of substantial public import."

Additionally, the fact that the importance of these issues transcends the case at bar is demonstrated vividly by the myriad state-court cases litigating these issues. Because no-fault insurance is mandated in only a small minority of states, and because no other state has a scheme identical to Michigan's, it is appropriate to leave determination of No-Fault issues to the Michigan courts. Intervention by the federal courts risks conflicting judgments and the thwarting of the state's attempt to manage "its own affairs."

In *Moon v. Harrison Piping Supply,* 375 F. Supp. 2d 577 (E.D. Mich. 2005), *reversed in part on other grounds,* 465 F.3d 719 (6th Cir. 2006), the court decided a similar abstention question with regard to workers' compensation benefits. Despite the plaintiff's arguments to the contrary, the court found that the case "bears upon Michigan's significant interest in safeguarding the policy balance that the legislature struck" and that "this federal forum would have minimal interest in determining Plaintiffs entitlement to workers' compensation benefits." *Id.* at 590. The court ultimately did not abstain, but only because the plaintiff's RICO claim was dismissed

9

for other reasons, thus depriving the federal court of jurisdiction. *Id.* If workers' compensation legislation, which is present in every state even if with different details, is a sufficiently important state interest to warrant abstention, then Michigan's No-Fault Act must be an even clearer justification, standing as it does in stark contrast to most states' systems.

The Michigan Supreme Court has reiterated the comprehensive nature of the no-fault statutory scheme, stating that it was "designed to cover contingencies that could arise, including...the process for making a claim, the procedures for investigation by the insurer, and the *range of available enforcement* tools. All of which are found within the four corners of the [Act]." *Muci,* 478 Mich. at 187-88. Indeed, the Act is the "'rule book' for deciding issues involved in questions regarding awarding [PIP] benefits." *Rohlman,* 442 Mich. at 525. This Court should, like the *Moon* court, choose not to endanger the legislature's chosen policy.

The Michigan Legislature has rebuffed the insurance industry's attempt to impose a rate structure under the Act. Firmly-rooted principles of "comity and federalism" strongly support the Court's invocation of its power to "abstain out of deference to the paramount interests of another sovereign," in this case the State of Michigan. *Quackenbush v. Allstate Ins. Co., 517* U.S. 706, 723 (1996). The Act

and its comprehensive "rule book" provide the proper avenue for resolving these issues in state court. This Court should ignore Allstate's transparent dissimulation, recognize the purely state-law basis for this entire action, and abstain.

## 2. *Colorado River* Abstention Doctrine.

A corollary to *Burford* abstention is the notion that a federal court "has the power to abstain from exercising its jurisdiction over a case in deference to a parallel state-court proceeding if abstention will best promote the values of efficient dispute resolution and judicial economy." *Gentry v. Wayne County.,* 2010 WL 4822749 at *2 (E.D. Mich. Nov. 22, 2010) (citing *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976)). This power should be utilized when two criteria are met: (1) the federal and state suits are parallel, and (2) "abstention will actually serve the end of efficient court administration." *Id.*

When it brought this federal case, Allstate was well aware that it was attempting to litigate the same issues it is actively litigating in numerous state courts simultaneously. Specifically, there are ongoing and active cases in Michigan courts between Allstate and Superior and/or its insureds. These cases involve Allstate's refusal to pay PIP benefits, forcing Superior or the insured to sue for reimbursement of such benefits provided to Allstate's insured under the Act.  It is a total waste of this Court's resources to decide issues being decided elsewhere or to attempt to

amend the Michigan No Fault Act by defining the "reasonable" charge for a specific service.

This suit and the concurrent state suits are parallel proceedings. Taken as a whole, the state-court cases involve the same parties and the same issues. Resolution of the state-court cases will resolve all or most of the issues before this Court because the state-court cases will decide whether Superior's charges are reasonable under the Act. Despite Allstate's attempts to clothe its allegations in the language of federal law, this is a No-Fault Act case. Regardless of the terminology used, Allstate and Superior are disputing the reasonableness of charges based on the No-Fault Act and contracts made thereunder. This litigation is thus duplicative and falls squarely in the first prong of the *Colorado River* test.

The second prong of the *Colorado River* test is also met. "Efficient court administration" would be promoted by abstention here, because, among other factors, (1) the state-court cases were filed first (and new ones continue to be filed); (2) the state-court cases are consequently further along in the litigation process; (3) Allstate's rights are adequately protected in state court; (4) abstention will help to avoid piecemeal litigation by avoiding duplication; (5) both federal and state courts have jurisdiction over Allstate's claims; and (6) most notably, the basis for this suit is state law. This last factor is by far the most compelling reason for abstention, since Allstate's attack of the No-Fault Act is fundamentally a state concern. Thus, this

Court should abstain and allow the state courts to properly and efficiently resolve any disputes under Michigan's No-Fault statutory scheme.

### C.    Allstate's Declaratory Judgment Claim Should be Dismissed.

#### 1.    Allstate is Judicially Estopped from Bringing its Declaratory Judgment Claim Where It Has Already Conceded that Federal Courts Should Decline Jurisdiction of Declaratory Judgment Actions Related to the No-Fault Act In Another Proceeding.

Allstate cannot use federal declaratory relief pursuant to 28 U.S.C. § 2201(a) as a tool for federalizing an action that solely involves legislative and state law determinations of the parties' rights and obligations under the No-Fault Act. In fact, Allstate has already conceded that the federal courts should not exercise jurisdiction under these circumstances. In *Allstate Ins. Co. v. Nowakowski,* 861 F. Supp. 2d 866 (W.D. Mich. 2012), Allstate filed a complaint in Michigan state court seeking a declaratory judgment regarding the parties' rights and obligations under the No-Fault Act. *Id.* at 871. After the Defendant removed the case to federal court, Allstate filed a motion to remand the case back to state court on the basis that its declaratory judgment action made no allegation seeking judgment or relief under any federal law and that the state court had proper jurisdiction over this matter. *Id.* at 869. The Court agreed and granted Allstate's motion to remand holding that: "[t]he cause of action anticipated by Allstate (the declaratory judgment plaintiff) does not arise

13

under federal law. [Defendant's] entitlement to recover medical benefits under her no-fault policy is a state-law issue." *Id.* at 871.

Allstate is now engaging in the same action that it vigorously argued against in the *Nowakowski* case. As stated by the U.S. Supreme Court in *New Hampshire v. Maine,* 532 U.S. 742, 749 (2001), "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position[.]" *See also Renishaw P.L.C. v. Marposs Societa' Per Azioni,* 974 F. Supp. 1056, 1085 (E.D. Mich. 1997).

Although there is no exhaustive formula for determining the applicability of judicial estoppel, several factors typically inform the decision whether to apply the doctrine such as whether: 1) the party's later position is "clearly inconsistent" with its earlier position, 2) the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled, and 3) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *New Hampshire,* 532 U.S. at 750-51.

Judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by that party in a prior proceeding.

14

*Marposs,* 974 F. Supp. at 1085 (citing *United States v. Owens,* 54 F.3d 271, 275 (6th Cir. 1995), *cert. dismissed,* 516 U.S. 983(1995)).

> The doctrine preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment. Judicial estoppel only requires a finding of `judicial acceptance,' i.e., that the first court adopted the position urged by the party, either as a preliminary matter or as a part of a final disposition.

*Id.* at 1085. Here, Allstate has taken a clearly inconsistent position regarding whether a federal court should exercise jurisdiction over a declaratory action regarding rights and obligations pursuant to the No-Fault Act and successfully argued that position through submission of a motion in a prior judicial proceeding. *See Valentine-Johnson v. Roche,* 386 F.3d 800, 811-12 (6th Cir. 2004) (holding that judicial estoppel prevented defendant from arguing that the district court did not have jurisdiction to review plaintiffs claim when the defendant had previously filed a motion to dismiss in an earlier administrative proceeding arguing that *only* the district court had jurisdiction over the claim).

Therefore, Allstate is judicially estopped from advancing any argument that this Court should exercise jurisdiction over its declaratory judgment claim. Thus, Allstate's claim should be dismissed in its entirety and Superior should be awarded its costs and attorneys' fees for having to defend such a baseless claim.

15

### 2.    The McCarran-Ferguson Act Provides for Reverse Preemption of Allstate's Declaratory Judgment Claim.

*15 U.S.C. § 1011, et seq.,* known as the McCarran-Ferguson Act, bars Allstate from bringing its declaratory judgment claim (Count I) asking the Court to declare a "reasonable" charge under the Michigan No-Fault Act for MRI services. The McCarran-Ferguson Act dictates that insurance "shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a). This provision, combined with 15 U.S.C. § 1012(b), provides that "[no act of Congress shall be construed to invalidate, impair or supersede any law enacted by any state for the purpose of regulating the business of insurance" unless that act "specifically relates to the business of insurance." 15 U.S.C. § 1012(b). The McCarran-Ferguson Act provides for "reverse preemption" in the insurance business and "[a] general federal law that does not specifically relate to the business of insurance, therefore, cannot be construed to 'invalidate, impair, or supersede" a state law enacted to regulate the insurance business." *See Genord v. Blue Cross & Blue Shield,* 440 F.3d 802, 805 (6th Cir. 2006). In order to determine if the federal statute in question is subject to reverse preemption, a three prong test is applied:

> The threshold question is whether the federal statute at issue "specifically relates to the business of insurance." If it does, then the McCarran-Ferguson Act by its own terms does not allow for reverse preemption.... If not, then there are two remaining questions that both must be answered in the affirmative in order to conclude that application of a federal law is reverse preempted by the existence of a

16

state law. One is whether the state statute at issue was "enacted...for the purpose of regulating the business of insurance." The other is whether the application of the federal statute would "invalidate, impair, or supersede" the state statute. *Kenty v. Bank One, Columbus, N.A.,* 92 F.3d 384, 392 (6th Cir. 1996) (setting forth the McCarran-Ferguson Act analysis).

*Genord,* 440 F.3d at 805-806.

The authority for Allstate's declaratory judgment claim is delineated in 28 U.S.C. § 2201(a), which does not specifically relate to the business of insurance. Therefore, the first question indicates that reverse preemption is applicable to Allstate's declaratory judgment claim.

Second, Michigan's Insurance Code was enacted specifically to regulate the business of insurance. The Michigan Insurance Code is a comprehensive act, the purpose of which is stated in the preamble - that the Code is "[a]n act to revise, consolidate, and classify the laws relating to the insurance and surety business." Michigan Insurance Code, 1956 Mich. Pub. Acts 218. The Michigan Supreme Court has "without exception, emphasized the act's comprehensive nature." *Muci v. State Farm Mut. Auto. Ins. Co,,* 478 Mich. 178, 187 (2007). The United States Supreme Court has held that: "[t]here can be no doubt that the actual performance of an insurance contract falls within the 'business of insurance' ...." *United States Dep't of Treasury v. Fabe,* 508 U.S. 491, 503(1993). Therefore, the second question supports reverse preemption of Allstate's declaratory judgment claim.

17

Last, Michigan's Insurance Code expressly sets forth the burden a medical provider must meet in submitting a claim and relief for excessive claims. *See e.g.,* M.C.L. §§ 500.3142(2), 500.3148; *Bronson,* 295 Mich. App. at 450. Michigan's Legislature specifically contemplated violations of the Insurance Code and provided recourse for violations within the Insurance Code. If Allstate is permitted to proceed, then it would have recourse outside of that contemplated and provided by the legislature. Further, any determination by this Court regarding what could be considered a reasonable charge for MRIs under the No-Fault Act operates as a declaratory judgment with respect to all MRI providers in the entire state and would essentially impose a fee schedule on providers despite the legislature's refusal to do so. This third and final question indicates that reverse preemption is applicable to Allstate's claim.

> **3.    The *Wilton/Brillhart* Doctrine Provides Courts With Greater Discretion to Decline Jurisdiction Over Declaratory Judgment Actions.**

The Court should abstain from hearing this case based upon the discretionary standards defined in *Wilton v. Seven Falls Co.,* 515 U.S. 277 (1995) and *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491 (1942). *Wilton* is one of several U.S. Supreme Court cases holding that federal courts are given substantial discretion in deciding whether or not to exercise declaratory relief jurisdiction.

In *Brillhart,* an insurer, anticipating a coercive suit, sought a declaration in federal court of nonliability on an insurance policy. The district court dismissed the action in favor of pending state garnishment proceedings between the parties. The Court explained that *"ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." Brillhart,* 316 U.S. at 495. The Supreme Court in *Wilton,* relying on *Brillhart,* stated that "[d]istinct features of the Declaratory Judgment Act...justify a standard vesting district courts with *greater discretion in declaratory judgment actions"* and held that *Brillhart's* discretionary standard, rather than the "exceptional circumstances" test articulated in *Colorado River* applies in instances where only declaratory relief is sought. *Wilton, 515* U.S. at 286. Although Allstate asserts two new claims for payment under mistake of fact and unjust enrichment in an obvious attempt to avoid this greater discretionary standard, as discussed above, those claims must be dismissed for failure to state a claim. Therefore, Allstate's declaratory judgment claim must also be dismissed regardless of whether the *Colorado River* or *Brillhart* standard is applied.

### 4. The *Scottsdale* Factors Favor that the Court Decline to Exercise Jurisdiction on Allstate's Declaratory Judgment Claim.

Courts have substantial discretion in deciding whether or not to hear or decide particular declaratory cases. *See e.g., Aetna Casualty and Sur. Co. v. Sunshine Corp., 74* F.3d 685 (6th Cir. 1996). There are five factors used to determine whether or not to adjudicate a case; whether the declaratory action: (1) would settle the controversy, (2) would serve a useful purpose by clarifying the legal relations at issue, (3) is merely intended to advance "procedural fencing" or "a race for res judicata," (4) would increase friction between state and federal courts and improperly encroach upon state jurisdiction, and (5) whether there is a better or more effective alternative remedy. *Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546 (6th Cir. 2008).

The first of these *Scottsdale* factors clearly favors declining to rule on Allstate's declaratory judgment claim. Even if this Court were to make determinations regarding the reasonableness of Superior's charges, these same issues will continue to be litigated in state court, as indeed they are being litigated currently. No Michigan state court is bound to accept this Court's judgment, especially on an issue so inherently bound up in state law. To the contrary, a decision by this Court could easily end up contradicting state court opinions and thus leaving the disputed questions farther from resolution, not closer to it.

For the same reasons, the second *Scottsdale* factor supports declining jurisdiction. Due to the huge number of ongoing cases dealing with these same

issues, a declaratory judgment by this Court will not clarify the legal relations between Allstate and Superior. The potential for contradictory judgments will, instead, significantly muddy the water in this respect. In fact, the Sixth Circuit has "repeatedly held in insurance coverage diversity cases that 'declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court.'" *Bituminous Cas. Corp. v. J & L Lumber Co.,* 373 F.3d 807, 812 (6th Cir. 2004).

As for "procedural fencing," it is apparent that Allstate is engaging in exactly the sort of "race for res judicata" against which the *Scottsdale* court admonished parties. If Allstate's concern were simply to obtain a fair hearing for its claims, it had no need to file this action. Numerous state court actions were and are litigating the reasonableness of charges such as Superior's, and there is no allegation that these ongoing cases would have been inadequate in any way. The sole reason to file yet another case before *this Court* is to forum shop and attempt to gain a procedural advantage.

*Scottsdale* factors #4 and #5, however, are truly decisive. Having a federal court mandate a reasonable charge under the No-Fault Act (which this Court must necessarily do in order to adjudicate Allstate's claims) would unavoidably create friction with the state. Automobile insurance under the Act is, after all, purely a state-law issue. Moreover, Michigan's legislature deliberately left the standards for

reasonableness under the statute undefined; it could have specified a more precise rule or imposed a fee-schedule, but chose not to do so. Making the determination demanded by Allstate would both undermine the Michigan legislature's chosen balance and go directly against the legislature's intent. When a case involves only complicated and factual issues of state law, and there is no suggestion that a state court could not decide the issues fairly and impartially, federal courts should decline to issue declaratory relief. *American Home Assurance Co. v. Evans,* 791 F.2d 61 (6th Cir. 1986). Therefore, this Court should not exercise its discretionary jurisdiction over Allstate's claim.

### D.    Collateral Estoppel or Claim Preclusion Compels Dismissal of The Complaint.

Allstate contends that Superior's charges are not "reasonable" charges under the No-Fault Act. In addition to its newly alleged claims of payment under mistake of fact and unjust enrichment, Plaintiff seeks a declaration that, among other things: (a) the charges submitted by Superior for MRIs performed in 2011-2014 are not and were not reasonable, (b) it has no obligation to pay any amount exceeding a reasonable amount for MRIs performed by Superior (whether previously performed or in the future), and (c) Superior's charges for MRIs are so excessive as to have no reasonable foundation. Allstate also asks this Court to determine the amount that should be charged for Superior's MRIs. As a result, Allstate would have this Court effectively set aside any and all settlements and state court judgments previously

22

entered on those claims because they are part of the same claims on which it seeks judgment on in this litigation.

A final judgment precludes the parties or their privies from re-litigating issues that were, or could have been, raised in the action. "[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of that issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry,* 449 US. 90, 94 (1980).[4] Under the Full Faith and Credit Clause, U.S. Const., Art. IV, § 1, and the statute implementing that provision, 28 U.S.C. § 1738, federal courts considering whether to give preclusive effect to state court judgments must apply the state's law of collateral estoppel. *See Migra v. Warren City School Dist.,* 465 U.S. 75, 81 (1984).

Generally, for collateral estoppel to apply three elements must be met: (1) "a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment;" (2) "the same parties must have had a full [and fair] opportunity to litigate the issue;" and (3) "there must be mutuality of estoppel." *Storey v. Meijer, Inc.,* 431 Mich. 368, 373, n.3 (1988). But, "where collateral estoppel is being asserted defensively against a party who has already had a full and fair opportunity to litigate the issue, mutuality is not required." *Monat v. State Farm Ins. Co.,* 469 Mich. 679, 680-81 (2004).

The first two elements necessary for collateral estoppel are satisfied. Superior and/or the Insureds have previously litigated issues of reasonableness of the charges with Allstate to judgment. Superior is asserting collateral estoppel against Plaintiffs who had a full and fair opportunity to litigate the issue. Therefore, the third element, mutuality of estoppel, need not be established.

Therefore, this Court should dismiss the present litigation.

## V.   CONCLUSION

WHEREFORE, Defendant Superior Diagnostics, Inc., d/b/a Superior Imaging, respectfully requests that this Court enter an order dismissing the Complaint in its entirety against it pursuant to Fed. R. Civ. P. 12(b)(6), the Court's discretionary powers and the Court's abstention powers, along with an award of costs and attorneys fees so wrongfully incurred.

JOELSON ROSENBERG PLC

/s/ Peter W. Joelson
Peter W. Joelson (P51468)
pwj@jrlawplc.com
Emily Warren (P76675)
ewarren@jrlawplc.com
*Attorneys for Defendant*
30665 Northwestern Hwy., Ste 200
Farmington Hills, MI  48334
(248) 626-9966  fax:  (248) 855-9496

LAW OFFICES OF GARY R. BLUMBERG PC

/s/ Gary R. Blumberg

24

Gary R. Blumberg (P29820)
grblumberg@blumbergpc.com
*Attorneys for Defendant*
15011 Michigan Ave.
Dearborn, MI 48126
(313) 230-1121

Dated:      February 29, 2016

CERTIFICATE OF SERVICE

NOW COMES the undersigned and hereby states that on February 29, 2016, the above pleading and this Certificate of Service were e-filed and e-served using the ECF system which will send notification of such filing to all counsel.

/s/ Susan Brohman
Susan Brohman

1